UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-124 (2) (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON OBJECTION TO REPORT AND RECOMMENDATION |
| MOHAMED JAMA ISMAIL, | |
| Defendant. | |

Defendant Mohamed Jama Ismail is charged with wire fraud, money laundering, and conspiracy to commit wire fraud and money laundering. (ECF No. 57.) Ismail moved to suppress a statement made during the execution of a search warrant. (ECF No. 250.) In a Report and Recommendation, United States Magistrate Judge Tony N. Leung recommends denying the motion. (ECF No. 315 ("R&R").) Ismail objects (ECF No. 323), so the Court reviews the R&R *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2. Based on that review, the Court overrules the objection and accepts the R&R.

**ANALYSIS**[1]

The R&R found that the statements need not be suppressed because (1) Ismail was in custody when he made the challenged statements so *Miranda* warnings were not required and (2) the statements were voluntary. Ismail objects on both bases.

**I.     Ismail Was Not in Custody**

The Constitution guarantees a criminal defendant the right not to incriminate himself. U.S. Const. amend. V. "The Fifth Amendment requires that Miranda warnings be given when a person is interrogated by law enforcement after being taken into custody." *United States v. Smialek*, 970 F.3d 1070, 1073 (8th Cir. 2020) (citation omitted). "A person is considered to be in custody for the purposes of Miranda warnings when there is a formal arrest or restraint on his or her freedom of movement of the degree associated with formal arrest." *United States v. Sandell*, 27 F.4th 625, 628–29 (8th Cir. 2022) (cleaned up, citation omitted). The *Griffin* factors are used to determine whether an individual is in custody at the time of questioning:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the

---

[1] The R&R details the facts and procedural history of this case, (R&R at 2–9), which are incorporated by reference.

>   questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). If after considering the factors, a court determines that the interview was custodial and that the defendant was not informed of his or her *Miranda* rights, then the statements were obtained in violation of the Fifth Amendment and must be suppressed. *United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). These factors should not, however, simply be tallied up, and custody decided based on the number of factors that weigh for or against custody; "[t]he ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." *United States v. Czichray*, 378 F.3d 822, 828 (8th Cir. 2004).

The first factor goes a long way to showing that Ismail was not in custody. "The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *Griffin*, 922 F.2d at 1349 (quotation marks and citation omitted). This is "powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Czichray*, 378 F.3d 826. Efforts by the officers to assure the person that he is not under formal arrest or obligated to answer questions become even more important when interviewing a person present during a warrant search, where the other factors indicating custody tend to be present. *United States v. Roberts*, 975 F.3d 709, 716–17 (8th Cir. 2020). Here, the recorded questioning makes clear that the detectives repeatedly assured Ismail he was not under

3

arrest, he could leave or stop at any time, and he was speaking to the detectives voluntarily. These assurances "are likely sufficient to refute the notion he [wa]s in custody." *Id.* at 717; *see also United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) (noting the Eighth Circuit has never held a person was in custody after receiving admonitions from officers that the defendant was free to leave).

Several other factors support concluding that Ismail was not in custody. Ismail voluntarily acquiesced to official's requests to respond to questions, and he did not indicate he wanted to terminate the interview. *Czichray*, 378 F.3d at 828–29. The agents did not employ strong-arm or deceptive tactics; they were candid with Ismail and asked straightforward questions. *Cf. Axsom*, 289 F.3d at 497, 502 (concluding that agents did not use strong-arm or deceptive tactics when they were candid about the crime that the defendant was suspected of committing and asked "straightforward questions"). Nor was Ismail arrested at the conclusion of the interview.

The remaining two factors do not move the needle much either way. Regarding freedom of movement, Ismail was not handcuffed in the car and the doors remained unlocked.[2] *United States v. Hoeffener*, 950 F.3d 1037, 1046 (8th Cir. 2020) (holding that the defendant was not in custody in the police car because he "was not handcuffed or

---

[2] Although he was removed from his home and initially handcuffed, those handcuffs were removed once he entered the car. Even in less dangerous circumstances, handcuffing for officer safety and supervision during an interview do not render the interrogation custodial. *See United States v. Giboney*, 863 F.3d 1022, 1028 (8th Cir. 2017); *Czichray*, 378 F.3d at 825, 830; *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006).

4

otherwise restrained"). However, it was exceedingly cold on the day of the interview, and Ismail was not dressed for the cold weather. Ismail argues that his only option "was to terminate the encounter and walk down the snowy street in his skivvies." (ECF No. 301 at 5.) Ismail ignores another alternative—he could have stopped the interview and remained in the car. S*ee Czichray*, 378 F.3d at 828; *cf. United States v. New*, 491 F.3d 369, 373–74 (8th Cir. 2007) (finding an immobile hospital patient not in custody when told he was free to terminate the interview). Still, Ismail never asked to leave, so the Court cannot conclude whether he could have left the car. *See Hoeffener*, 950 F.3d at 1046 ("At no time did [the defendant] ask to get out of the vehicle."). Overall, the Court cannot conclude that Ismail could not leave the scene.

Finally, the atmosphere was police-dominated, which tends to favor finding that the defendant was in custody. However, a police-dominated atmosphere is inherent in a warrant search, and not enough to transform the encounter into a custodial one. *See United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014).

Considering all of these factors, the Court concludes that Ismail was not in custody because he was not restrained as though he was under formal arrest. *See Roberts*, 975 F.3d at 717 (defendant not in custody when officers questioned him in their car during a search of his house); *Hoeffener*, 950 F.3d at 1046 (same). Therefore, the agents did not need to issue *Miranda* warnings.

## II.   The Statements Were Voluntary

"The government must prove by a preponderance of the evidence that the defendant's statements were voluntary." *United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005). Courts look at the totality of the circumstances. *Id.*; *see also Arizona v. Fulminate*, 499 U.S. 279, 285–86 (1991). The Court must look at the "conduct of the officers and the characteristics of the accused." *Wilson v. Lawrence County*, 260 F.3d 946, 952 (8th Cir. 2001). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Brave Heart*, 397 F.3d at 1040 (citation omitted).

Here, agents did not use any improper questioning tactics, and Ismail's responses and conduct gave no indication that coercion was causing his will to be overborne. *Thatsaphone v. Weber*, 137 F.3d 1041, 1047 (8th Cir. 1998). The agents explained why they wanted to speak with Ismail, they did not make any promises, and they conducted the interview in a cordial tone. Accordingly, the statements were voluntary.

Ismail makes several arguments to the contrary. First, he asserts that the agents engaged in covert intimidation tactics by forcibly removing Ismail from his home, handcuffing him, and failing to provide basic clothing and footwear in cold weather conditions. The Court disagrees; these facts do not render the statements involuntary. Officers routinely remove someone from their home and handcuff them in the execution

6

of a search warrant. Doing so does not make subsequent statements—particularly those made in the circumstances presented here—involuntary. *See United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005). Further, agents questioned Ismail in a warm vehicle, and Ismail never asked the agents to retrieve his clothing from the house.

Second, Ismail argues that he lacked the full capacity to understand the legal intricacies of his rights based on his language deficit and because he did not have any prior contacts with law enforcement. While English is not Ismail's first language, the recorded interview shows that Ismail was able to understand and respond to the agents. And while Ismail asked whether he needed an attorney, the agents answered candidly that obtaining counsel was his decision and he was speaking to agents voluntarily. The agents' conduct did not improperly pressure Ismail to continue with the interview. Ismail's arguments, taken together, are not enough to render the statements involuntary. The government has met its burden to show the statements were voluntary, so the Court will deny the motion to suppress.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Ismail's Objection (ECF No. 323) is OVERRULED;

2. The Report and Recommendation (ECF No. 315) is ACCEPTED;

3. Ismail's motion to suppress statement (ECF No. 250) is DENIED.


Dated: February 20, 2024    BY THE COURT:

s/Nancy E. Brasel<br>
Nancy E. Brasel<br>
United States District Judge